**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **STUDENT DOE, by and through her parents,** **MOTHER DOE and FATHER DOE,** **individually and on their own behalf ,** **Plaintiffs,** | **CIVIL ACTION** |
| **v.** | **NO. 25-1496** |
| **METHACTON SCHOOL DISTRICT,** **Defendant.** | |

**HODGE, J.**                                                    **March 30, 2026**

**MEMORANDUM**

In this action, Plaintiffs Student Doe, Mother Doe, and Father Doe (together, "Plaintiffs") assert claims against Methacton School District (the "Methacton" or "Defendant") alleging (1) violation of Title IX, 20 U.S.C. § 1681; (2) retaliation in violation of Title IX, 20 U.S.C. § 1681; (3) enforcement of Title IX pursuant to 42 U.S.C. § 1983; (4) enforcement of the Equal Protection Clause pursuant to 42 U.S.C. § 1983; (5) enforcement of the Hearing Officer's Decision and Order; (6) entitlement to an award of attorneys' fees pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* ("IDEA"); and (7) entitlement to attorneys' fees pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.* ("Section 504"). (ECF No. 11.) Defendants moved to dismiss Counts 1–4. (ECF No. 15 (the "Motion").) For the reasons that follow, Defendant's Motion is granted in part and denied in part.

I.      **BACKGROUND**[1]

a.  **Factual Background**

At the time the operative complaint in this case was filed on July 15, 2025, Student Doe was 15 years old. (ECF No. 11 ("Am. Compl.") at ¶ 16.) She attended school in the Methacton School District during her 3rd grade school year (2018–2019), 4th grade school year (2019–2020),

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

two months of her 5th grade school year (2020–2021), and her 7th grade school year (2022–2023).[2] (*Id.* ¶¶ 16, 20.)[3] Student Doe has Attention-Deficit/Hyperactivity Disorder ("ADHD"), Post-Traumatic Stress Disorder ("PTSD"), Generalized Anxiety Disorder, and Major Depressive Disorder. (*Id.* ¶ 17.) Further, Student Doe currently receives treatment for trauma as a result of sexual abuse and molestation she suffered when she was four years old, which Defendant was made aware of prior to Student Doe's enrollment in the school. (*Id.* ¶¶ 18–19.) In March 2022, Methacton evaluated Student Doe and found that she qualified for special education services under the primary disability category of Emotional Disturbance and secondary disability category of Other Health Impairment due to her ADHD symptoms and executive functioning needs. (*Id.* ¶¶ 27–28.) On July 20, 2022, Student Doe received an Individualized Education Program/Plan ("IEP") from Methacton. (*Id.* ¶ 29.) This IEP, among other things, provided Student Doe access to an emotional support teacher. (*Id.*) Student Doe began attending Arcola Intermediate School in Methacton in the fall of 2022. (*Id.* ¶ 30.)

### i.  Harassment by Mr. Geruntho

During the 2022–2023 school year, Student Doe utilized her emotional support classroom and emotional support teacher, Amanda Chud ("Ms. Chud"), with increasing frequency throughout the year due to her increasing anxiety. (*Id.* ¶¶ 31–32.) Student aide Mr. Geruntho ("Mr. Geruntho") was also present in the emotional support classroom, as he was assigned to work as a one-to-one aide for another student, "Nick."[4] (*Id.* ¶ 33.) In November and December 2022, Student Doe was

---

[2] Student Doe attended Holy Family School, a parochial school in Phoenixville, Pennsylvania, for her 6th grade school year (2021–2022), until she was withdrawn by her parents in April 2022 and homeschooled for the remainder of the school year. (*Id.* ¶ 26.)

[3] In October 2020, Student Doe was withdrawn from the school district and homeschooled due to limited progress with remote learning during COVID-19. (*Id.* ¶ 21.)

[4] Mr. Geruntho was employed by an outside contractor, First Children Services, LLC, an agency that provided special education assistants and aides to the Defendant. (*Id.* ¶ 34.)

left unsupervised with Mr. Geruntho and Nick in a small copy room on multiple occasions. (*Id.* ¶ 36.)

From November to December of 2022, Mr. Geruntho allegedly began pursuing an inappropriate relationship with Student Doe and grooming her. (*Id.* ¶ 43.) He did so by allowing Student Doe to call him by his first name, sharing details about his personal life, following her on Instagram, and giving her a board game as a Christmas gift. (*Id.* ¶¶ 42, 49.) On December 22, 2022, Student Doe had lunch alone with Nick and Mr. Geruntho in the copy room. (*Id.* ¶ 50.) During this lunch, Mr. Geruntho told Student Doe that his baby's first word was "going to be a racial slur" and said that he was always saying the "n-word" around the baby. (*Id.* ¶ 50.) The same day, while in the emotional support classroom with Student Doe and other students, Ms. Chud left the classroom and Mr. Geruntho went over to Student Doe and pointed his finger towards her pubic area. (*Id.* ¶ 53.) When Student Doe asked Mr. Geruntho what he was doing he said, "I am trying to touch your wenis." (*Id.*) The same week, Student Doe and Nick were playing a game with Mr. Geruntho and Mr. Geruntho got mad and yelled "nig---" and then stopped himself mid-word. (*Id.* ¶ 51.)

During this time of increased exposure to Mr. Geruntho in November and December 2022, Student Doe exhibited heightened symptoms of anxiety, including acting younger than her age. (*Id.* ¶ 45.) Ms. Chud emailed Mother Doe to let her know of Student Doe's concerning behavior she had observed in the classroom. (*Id.*) Student Doe also asked Mother Doe questions about Student Doe's prior abuse during this time, which was unusual for her. (*Id.* ¶ 47.)

### ii. Student-on-Student Bullying

Student Doe was also subject to student-on-student harassment while enrolled in Methacton schools. First, on March 3, 2021, a student referred to Student Doe and two other girls in the lunchroom as a "whore." (*Id.* ¶ 23.) Student Doe's parents reported this to the school the

next day but were not advised of any follow-up action by Methacton. (*Id.*) On March 11, 2021, Student Doe's parents had a meeting with Methacton to discuss her accommodations under Section 504, and it was determined that she qualified for Section 504 accommodations. (*Id.* ¶ 25.)

Upon Student Doe's re-enrollment in Methacton in the fall of 2022, following her time being homeschooled and attending Holy Family School, Student Doe was subjected to additional bullying. At the beginning of the school year, a male student commented to Student Doe on the bus that her stomach "looked like she had a dick." (*Id.* ¶ 70.) The same student later said, "women like you deserve to be slaves." (*Id.*) A male student also spit on Student Doe on the bus. (*Id.*) Student Doe's parents reported these incidents to Stephanie Berardelli ("Mrs. Berardelli"), the school counselor at Arcola Intermediate School, and Michael Bourdreau ("Mr. Bourdreau"), the Arcola Intermediate School principal, but did not receive a response. (*Id.* ¶¶ 9, 70–71.) Following these incidents of bullying on the bus, Student Doe's parents began privately transporting her to school so that she would not be subjected to continued harassment by her peers. (*Id.* ¶ 73.)

In November or December of 2022, Nick made numerous inappropriate, sexual comments to Student Doe while they were in the copy room together. In one incident, Nick asked Student Doe, in the presence of a substitute adult classroom aide ("Dan") if she was taking an Albert Einstein poster home with her so that she could "suck his dick." (*Id.* ¶ 37.) The substitute aide did not respond or reprimand Nick for this comment. (*Id.* ¶ 38.) Student Doe's parents reported this incident to Methacton but did not receive a response. (*Id.* ¶¶ 38, 70–71.)

### iii. Methacton's Response to Student Doe's Complaints of Sexual Harassment

On December 29, 2022, Mother Doe emailed the District Special Education Supervisor Dr. Danielle Fowlston ("Dr. Fowlston"), Ms. Chud, and Mr. Bourdreau about Mr. Geruntho and Nick's inappropriate conduct and demanded that Mr. Geruntho not have any further contact with Student Doe. (*Id.* ¶ 63.) Mother Doe's email explained that Student Doe was a victim of prior

4

sexual abuse and molestation, so the harassment by Mr. Geruntho and Nick was particularly triggering for Student Doe. (*Id.* ¶¶ 63–64.) The email does not explicitly request an investigation into Mr. Geruntho. (*Id.* ¶ 65.) On January 2, 2023, after not receiving a response to her December 29, 2022 email, Mother Doe sent another email to Dr. Fowlston, Ms. Chud, and Mr. Bourdreau stating that Student Doe would not return to school because she needed assurance from Methacton that Student Doe would not come into contact with Mr. Geruntho and that she would be able to access her education in a safe environment free from harassment. (*Id.* ¶ 67.)

The next day, on January 3, 2023, Dr. Fowlston, Ms. Chud, and Mother Doe participated in a Zoom call to discuss the reported sexual harassment by Mr. Geruntho and Nick. (*Id.* ¶ 68.) The following day, Dr. Fowlston assured Mother Doe that the situation was handled, and it was safe for Student Doe to return to school the next day, although Dr. Fowlston did not provide additional details about Mr. Geruntho, his status, or Methacton's investigation into what had happened. (*Id.* ¶ 69.) Student Doe's parents never received any communication from Mr. Bourdreau regarding Mother Doe's emails reporting the sexual harassment. (*Id.* ¶¶ 70, 74.)

Following Mother Doe's report of Mr. Geruntho's sexual harassment to the school, no one from Methacton: (1) informed Student Doe or her parents of Student Doe's rights under Title IX; (2) initiated a Title IX investigation or referred the complaint to Methacton's Title IX Coordinator, Che Regina ("Dr. Regina"); or (3) advised Student Doe's parents of the supportive measures that were available to her. (*Id.* ¶¶ 75–76.)

On January 5, 2023, Student Doe returned to school. (*Id.* ¶ 79.) As a result of an unidentified Methacton employee's report of suspected abuse by Mr. Geruntho to the Office of Children and Youth ("OCY"), a caseworker interviewed Student Doe the day that she returned to school to discuss her report of sexual harassment. (*Id.* ¶ 80.) Student Doe's parents consented to Student Doe being interviewed without a parent present, and Ms. Chud attended the interview.

(*Id.*) Following the interview, Dr. Fowlston and Ms. Chud informed Student Doe's parents that Student Doe revealed that Mr. Geruntho had followed her on Instagram, which Student Doe's parents did not previously know. (*Id.* ¶ 82.) In response, Mother Doe requested a technology search be conducted to determine if there were other contacts between Student Doe and Mr. Geruntho on Methacton's servers, but this request, as well as a subsequent request on January 11, 2023, were ignored. (*Id.* ¶¶ 84–85, 91–92.)

On January 9, 2023, during an IEP team meeting held to address Student Doe's lack of progress in school and declining class attendance, Methacton proposed virtual instruction for Student Doe without offering supportive measures to allow her to access her current in-person educational programming. (*Id.* ¶ 90.) Student Doe's parents agreed to the virtual programming. (*Id.*) On January 20, 2023, Methacton held another IEP meeting with Student Doe's parents wherein Methacton proposed to move Student Doe entirely to the virtual program for the remainder of the school year. (*Id.* ¶¶ 98–99.) The proposal provided for in-person therapy sessions for Student Doe, check-ins with Ms. Chud, and the option for Student Doe to attend either 7th period art class or an 8th period club in school. (*Id.* ¶ 99).

On January 23, 2023, Student Doe returned to school under the new plan. (*Id.* ¶ 100.) However, Student Doe was expected to remain in the emotional support room where the sexual harassment by Mr. Geruntho had occurred with no identified plan for her day. (*Id.*) This was extremely upsetting to Student Doe, and she hid in a stairwell in the school building and asked her mother to pick her up. (*Id.*) The following day, Mother Doe emailed Methacton personnel letting them know that she would not send Student Doe back to school until a clear plan was in place for her. (*Id.* ¶ 101.)

On January 27, 2023, Methacton held an IEP meeting with Student Doe's parents and proposed Student Doe participate in all virtual programming, while attending her therapy sessions

and check-ins with Ms. Chud virtually as well. (*Id.* ¶ 102.) Student Doe's parents agreed to this because no other options were presented. (*Id.*)

Thereafter, Methacton stopped implementing Student Doe's IEP and failed to monitor her progress toward her IEP goals. (*Id.* ¶ 103.) The virtual program was inferior and lacked direct instruction. (*Id.* ¶ 104.) The only special education that Student Doe received from Methacton between January 27, 2023 and the last day of the school year were two virtual therapy sessions. (*Id.* ¶ 105.) The virtual check-ins with Ms. Chud previously contemplated did not happen. (*Id.*)

On March 22, 2023, Methacton recommended that Student Doe's virtual therapy services, which were the only remaining IEP services she received, be removed from her IEP. (*Id.* ¶ 106.) Ms. Chud also recommended that Student Doe's IEP goals be removed because she would no longer be getting any services to address them. (*Id.*)

On May 2, 2023, at a Zoom meeting with the Director of Pupil Services, Dr. Susan Angstadt ("Dr. Angstadt"), Student Doe's parents, and Dr. Fowlston, Mother Doe shared how challenging the virtual programming had been for Student Doe. (*Id.* ¶ 110.) However, neither Dr. Angstadt nor Dr. Fowlston offered any additional supports or continued programming for Student Doe. (*Id.*) During the meeting, Dr. Angstadt and Dr. Fowlston attempted to coerce Mother Doe into signing a waiver agreement that would have waived Student Doe's educational and due process rights related to future special education services and past claims against Methacton, including those related to special education and the sexual harassment Student Doe suffered. (*Id.* ¶ 111.) Mother Doe refused to sign the waiver, but Methacton still refused to conduct an internal investigation and contact Methacton's Title IX coordinator. (*Id.* ¶¶ 112–15.)

Following the May 2, 2023 meeting, Student Doe's parents retained an attorney, who requested educational records from Methacton on May 19, 2023 prior to the next scheduled IEP

meeting. (*Id.* ¶¶ 119–20.) Methacton stated that it would delay the next IEP meeting until it could provide the requested records. (*Id.* ¶ 121.)

On May 25, 2023, after Methacton refused to produce all of Student Doe's education records, Student Doe's parents filed a complaint with the Pennsylvania Department of Education ("PDE") alleging that Methacton had failed to provide all of Student Doe's education records. (*Id.* ¶ 122.) On June 13, 19, and 22, 2023, Methacton sent Student Doe's education records to Student Doe's attorney. (*Id.* ¶ 123.)

On July 6, 2023, Methacton held an IEP team meeting to develop an IEP for Student Doe for the 2023–2024 school year, although Methacton had still not provided Student Doe's parents with all of her education records. (*Id.* ¶ 124.) The following day, Methacton's attorney emailed Student Doe's attorney to advise her that Methacton had already produced all records and that internal email searches had been conducted, which was not accurate. (*Id.* ¶ 125.) Student Doe's attorney responded that she had not received any internal Methacton emails related to Student Doe, and she did not believe that none existed. (*Id.* ¶ 126.) On July 24, 2023, an investigator from the PDE confirmed with Methacton that it had provided all Student Doe's education records to her family, which according to Student Doe's parents was not true, and as a result the PDE closed the matter. (*Id.* ¶ 130.)

On July 25, 2023, Dr. Fowlston emailed Student Doe's revised IEP for her 8th grade year, which proposed that Student Doe return to Methacton for 8th grade and that she spend 72% of the school day in the regular education environment. (*Id.* ¶ 127.) Student Doe's parents believed that the proposed IEP was inadequate. (*Id.* ¶ 128.)

On July 27, 2023, Methacton's counsel emailed Student Doe's counsel to advise that Methacton re-ran the search for emails and found that there were internal emails concerning

Student Doe, and that she needed time to review the emails before producing them. Mother Doe filed a reconsideration request with the PDE on August 3, 2023. (*Id.* ¶ 134.)

On August 7, 2023, Student Doe's parents withdrew her from Methacton. (*Id.* ¶ 140.) Student Doe's attorney emailed Methacton's attorney to describe the deficiencies in Methacton's proposed IEP for the 2023–2024 school year, Methacton's continued failure to produce documents related to the sexual harassment Student Doe experienced, Methacton's failure to produce documents related to any investigation conducted into the harassment, Methacton's failure to provide appropriate social-emotional supports to Student Doe as a result of the trauma she suffered from the harassment, and Methacton's failure to conduct a Title IX investigation . (*Id.* ¶¶ 141–42.)

The PDE issued an amended report on August 23, 2023 that indicated that Methacton had "failed to provide, without unnecessary delay, the Student's education records" and ordered Methacton to engage in corrective action, including to allow Student Doe's parents to review Student Doe's records without unnecessary delay. (*Id.* ¶ 135.) On October 2, 2023, the investigator from the PDE sent a letter to Mother Doe informing her that Methacton had provided Student Doe's education records to her parents; however, the entirety of the records had still not been provided. (*Id.* ¶¶ 136–39.)

### iv.   Title IX Investigation and Special Education Due Process Proceedings

Also in the summer of 2023, Mother Doe directly emailed Methacton's Title IX Coordinator, Dr. Regina, to ask whether a Title IX investigation had begun, but Dr. Regina indicated she was not aware of the sexual harassment incident involving Mr. Geruntho and Student Doe. (*Id.* ¶ 145.) On August 30, 2023, Dr. Regina requested that Student Doe's parents complete Methacton's Title IX form, and Mother Doe submitted the form on September 7, 2023. (*Id.* ¶ 147.) On October 4, 2023, Dr. Regina concluded that the incident met the definition of Title IX sexual harassment and recommended that the report proceed under Methacton's Title IX policy.

(*Id.*¶ 148.) On October 9, 2023, Methacton initiated its formal Title IX grievance process. (*Id.* ¶¶ 149–52.) Mother Doe continued communicating with Dr. Regina thereafter, and the two agreed that Methacton would use a female Title IX investigator trained in trauma-informed practices. (*Id.* ¶ 150.) However, Student Doe's parents later learned that Methacton was moving forward with a Title IX investigator who was not trained in trauma-informed practices. (*Id.* ¶¶ 150–51.) Mother Doe sent a letter expressing her concern that the investigator did not meet the qualifications she had outlined. (*Id.*) Mother Doe did not hear back from Dr. Regina after sending her a list of possible Title IX investigators who met the previously agreed upon criteria. (*Id.* ¶ 152.) On March 19, 2024, Student Doe's parents received an email from Christina Lane ("Ms. Lane"), the third-party investigator hired by Methacton to investigate the Title IX report, who was one of the investigators on Mother Doe's list that met the agreed upon criteria for investigators. (*Id.* ¶ 157.) Ms. Lane attempted to schedule a video conference to begin the investigation. (*Id.*) On March 25, 2024, Student Doe's parents emailed Ms. Lane with further details about Student Doe and asking why the Title IX investigation was so delayed. (*Id.* ¶ 158.) Ms. Lane conducted the Title IX interview of Mother Doe on April 22, 2024. (*Id.* ¶ 159.)

On February 23, 2024 Student Doe's parents filed a due process complaint with the Office for Dispute Resolution ("ODR"), alleging that Methacton had denied Student Doe a free appropriate public education ("FAPE") under the IDEA and Section 504. (*Id.* ¶ 153.) Methacton produced records ahead of the first special education due process hearing on March 28, 2024, although it delayed in doing so and many of the emails were heavily redacted or irrelevant to the sexual harassment incident. (*Id.* ¶¶ 154–56.) The Special Education Hearing Officer issued a decision on September 13, 2024, finding that Methacton failed to provide Student Doe with a FAPE during the 2022–2023 school year by failing to put in place systems to monitor Student Doe's behavioral needs despite a clear need to do so; by failing to respond to Student Doe's

avoidant and interfering behaviors as they increased; by failing to offer direct instruction in social skills or coping skills during the 2022–2023 school year; and by improperly moving Student Doe to a virtual learning program in response to significant changes in her behaviors without offering a reevaluation to reassess her needs. (*Id.* ¶ 256.) The Hearing Officer awarded the maximum amount of compensatory education for Student Doe's 2022–2023 school year, which amounted to one hour of compensatory education for each hour that Methacton was in session during that year. (*Id.* ¶ 257.)

Less than one week after the Special Education Hearing Officer issued his Final Decision and Order, on September 20, 2024, Ms. Lane issued her draft Title IX Investigation Report. (*Id.* ¶¶ 159, 161.) The draft Title IX Investigation Report stated that the parties had requested Ms. Lane to delay the investigation so as not to interfere with the ongoing special education proceedings, which was inaccurate. (*Id.* ¶ 161.) Ms. Lane subsequently advised Mother Doe that Methacton was the one that had requested the delay. (*Id.*) Student Doe's parents advised Ms. Lane that the draft report included inaccuracies, was incomplete, and was unnecessarily delayed. (*Id.* ¶ 163.) On October 10, 2024, Ms. Lane sent the final Title IX Report to the parties.

After the Special Education Hearing Officer issued his Decision and Order, in October of 2024, Student Doe's parents began corresponding with Dr. Jamie Gravinese ("Dr. Gravinese"), Methacton's Director of Pupil Services, regarding their use of the compensatory education hours awarded to them. (*Id.* ¶¶ 165–81.) Throughout their approximately four months of correspondence, Dr. Gravinese delayed in responding to Student Doe's parents' inquiries regarding use of the compensatory education hours, provided inconsistent information regarding their use, imposed overly restrictive conditions on their use, improperly denied reimbursement for certain education expenses, and improperly applied funds from one compensatory education fund to reimburse

expenses that should have been covered by a new fund, all in violation of the Hearing Officer's Order and Decision. (*Id.*)

On November 5, 2024, two lawyers from Fox Rothschild, LLP emailed Student Doe's parents indicating they would be serving as the decision makers in Methacton's Title IX grievance process and offered them the opportunity to submit questions they wanted to be asked of any party or witness. (*Id.* ¶ 182.) On December 10, 2024, Dr. Regina sent Student Doe's parents an email that he had made the decision to dismiss the formal Title IX complaint without allowing the decision makers to complete their investigation. (*Id.* ¶ 184.)

### b. Procedural Background

Plaintiffs filed their initial complaint in this Court on March 20, 2025. (ECF No. 1.) Plaintiffs amended their complaint on July 15, 2025. (ECF No. 11.) Defendant moved to dismiss Counts 1–4 of the Amended Complaint on August 21, 2025. (ECF No. 15.)

On March 21, 2025, Student Doe's parents filed a complaint against Methacton with the Pennsylvania Human Relations Commission ("PHRC") alleging discrimination and retaliation by Methacton in violation of the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.* That complaint is currently pending before the PHRC.

## II.    LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of claims that fail to state a claim upon which relief may be granted. To survive a motion to dismiss, a complaint must contain sufficient facts that, when accepted as true and considered in the light most favorable to the plaintiff, state a facially plausible claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Lewis v. Atlas Van Lines, Inc.*, 542 F.3d 403, 405 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009). "[A] formulaic recitation of the elements of a cause of action will not do. . . . [A] complaint's factual allegations must be enough to raise a right to relief above the speculative level." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231–32 (3d Cir. 2008) (citation modified).

## III. DISCUSSION

### a. Violation of Title IX (Count 1)

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The statute provides for a private right of action for monetary damages. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 281 (1998). A plaintiff asserting a Title IX claim must establish that: "(1) the defendant receives federal funds; (2) sexual harassment occurred; (3) the harassment occurred under 'circumstances wherein the recipient exercise[d] substantial control over both the harasser and the context in which the known harassment occur[red];' (4) the funding recipient had 'actual knowledge' of the harassment; (5) the funding recipient was 'deliberately indifferent' to the harassment; and (6) the harassment was 'so severe, pervasive, and objectively offensive that it [could] be said to [have] deprive[d] the victims of access to the educational opportunities or benefits provided by the school.'" *Williams v. Pennridge Sch. Dist.*, 2018 WL 6413314, at \*6 (E.D. Pa. 2018), *aff'd* 782 F. App'x 120 (3d Cir. 2019) (citing *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 644–45, 650 (1999)).

A school district is "deliberately indifferent" when the official advised of the Title IX violation responds in a manner that is "clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648–49. There is also a causation element of a Title IX claim wherein the official's "deliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it." *Id.* at 644–45. "This causation element results in a

requirement that harassment, or the likelihood or vulnerability of a student to be subjected to it, must occur subsequent to an official's decision not to remedy a known violation." *Swanger v. Warrior Run Sch. Dist.*, 346 F. Supp. 3d 689, 705 (M.D. Pa. 2018). The standards for deliberate indifference impose a "significant burden on a Plaintiff and as such these claims 'rarely proceed beyond a motion to dismiss.'" *Doe v. Moravian Coll.*, No. 5:20-CV-00377, 2023 WL 144436, at *6 (E.D. Pa. Jan. 10, 2023).

Defendant argues that Plaintiffs have failed to demonstrate the fourth, fifth, and sixth factors of a Title IX claim. First, Defendant argues that Plaintiffs failed to allege that anyone at Methacton had "actual knowledge" of Mr. Geruntho's sexual harassment prior to Mother Doe's email reporting the conduct to Dr. Fowlston, Ms. Chud, and Mr. Bourdreau on December 29, 2022. (ECF No. 15 at 9.) Second, Defendant argues that once Methacton was put on notice of the sexual harassment after receiving Mother Doe's email, they were not "deliberately indifferent" to the harassment because they took immediate action to ensure that Mr. Geruntho had no further contact with Student Doe and reported the allegations to OCY, who interviewed Student Doe the day she returned to classes. (*Id.* at 9–10.) Finally, Defendant argues that Plaintiffs cannot show that the sexual harassment Student Doe suffered was severe, pervasive, or objectively offensive because some of the harassment was not sex-based and the harassment that was sex-based was isolated and took place over the course of eighteen months.[5] (*Id.* at 10–11.)

In evaluating Plaintiffs' claims, the Court divides the sexual harassment that Student Doe allegedly experienced into two categories—the student-on-student harassment and the harassment by Mr. Geruntho, a contractor hired by Defendant.

---

[5] The Court notes that the correct standard for a claim of sexual harassment under Title IX is that the harassment was "severe or pervasive," rather than "severe and pervasive," although many opinions use the disjunctive and conjunctive versions of the standard interchangeably. *Doe by & through Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 534 (3d Cir. 2018).

### i. Student-on-Student Harassment

As previously stated, to make out a claim for sexual harassment under Title IX, the harassment must be severe or pervasive such that it "effectively bars the victim's access to an educational opportunity or benefit." *Davis*, 526 U.S. at 633. To support a claim of sexual harassment, a plaintiff "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted discrimination because of sex." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998). Third Circuit courts have held that "sporadic and isolated incidents of sexual harassment fail to give rise to a Title IX claim." *Lansberry v. Altoona Area Sch. Dist.*, 318 F. Supp. 3d 739, 752–53 (W.D. Pa. 2018) (collecting cases).

Plaintiffs allege four instances of student-on-student harassment that could be construed as sex-based, which occurred over the course of approximately twenty-one months: (1) in March 2021 a student in the lunchroom referred to Student Doe as a "whore;" (2) in early fall of 2022 a student on the bus told Student Doe that her stomach "looked like she had a dick" and then (3) later said "women like you deserve to be slaves;" and (4) in November or December 2022 while in the copy room, Nick asked if Student Doe was taking an Albert Einstein poster home with her so that she could "suck his dick."[6] As a result of the comments made by students on the bus in early fall of 2022, Student Doe's parents began driving her to school so that she would not be subjected to continued harassment by her peers.

Focusing on the nature of the student-on-student sexual harassment Plaintiffs allege, the Court finds that Plaintiffs have failed to allege this conduct was sufficiently "severe or pervasive" to state a claim under Title IX. Plaintiffs allege four instances of sexual comments made by three

---

[6] Plaintiffs also allege that a student spit on Student Doe on the bus in early fall of 2022, but Plaintiffs do not sufficiently allege that this conduct had a relationship to Student Doe's sex.

different students that took place over the course of twenty-one months, which is insufficient to show pervasiveness. Moreover, the comments themselves, while certainly inappropriate, were not objectively so severe that they effectively denied Student Doe access to an educational opportunity or benefit. *See Davis*, 526 U.S. at 654 (clarifying that it is not enough to show that a student has been "teased" or "called . . . offensive names" to be liable under Title IX, even when that conduct results in a child refusing to go to school or suffers from a decline in grades as a result). Although Plaintiffs assert that the conduct that occurred on the bus was severe enough for Student Doe to stop taking the bus, the Court must keep in mind that, as the Supreme Court has held, "students are still learning how to interact appropriately with their peers" and therefore "students often engage in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it." *Id.* at 651–52. However, this kind of "teasing and name-calling among school children" does not give rise to a private right of action for damages under Title IX. The isolated instances of inappropriate comments from students are insufficiently severe or pervasive to permit liability under Title IX as a matter of law.

### ii.  Harassment by Mr. Geruntho

Turning to Plaintiffs' allegations of sexual harassment by Mr. Geruntho, the Court holds that Plaintiffs have plausibly alleged that the conduct was sufficiently "severe or pervasive" to give rise to liability under Title IX. Plaintiffs allege that Mr. Geruntho was inappropriately "grooming" Student Doe by buying her a Christmas present, allowing her to call him by his first name, sharing unspecified personal details, and following her on Instagram. The Court finds that these allegations, individually or in totality, do not necessarily give rise to sexual harassment, although this conduct may certainly be inappropriate for a school employee to engage in with a student. The sole instance of sex-based harassment by Mr. Geruntho that Plaintiffs allege occurred on December 22, 2022, when Mr. Geruntho pointed at Student Doe's pubic area and stated, "I am

16

trying to touch your wenis." Although the meaning of this statement is not entirely clear to the Court, the Court can and does draw reasonable inferences based on the area of the body that the adult male instructor pointed to on a minor female child, and for purposes of evaluating the Motion to Dismiss, the Court finds that this comment can plausibly be construed as a threat of a school employee to inappropriately touch Student Doe. Thus, Plaintiffs have alleged conduct that was sufficiently severe as to effectively deny Student Doe's access to her special education classroom.[7]

Even though Plaintiffs have alleged to this Court's satisfaction that the sexual harassment was sufficiently severe, Plaintiffs have failed to allege that Defendant acted with deliberate indifference once it was put on notice of Mr. Geruntho's conduct. Mother Doe emailed Dr. Fowlston, Ms. Chud, and Mr. Bourdreau on December 29, 2022 to notify them of Mr. Geruntho's inappropriate behavior towards Student Doe. Although the Amended Complaint contains allegations that Student Doe was displaying concerning behavior in the classroom as a result of Mr. Geruntho's inappropriate conduct prior to Mother Doe's December 29, 2022 email, there are no allegations that Defendant was put on actual notice of Mr. Geruntho's conduct until Mother Doe's December 29, 2022email.

In order to establish deliberate indifference, Plaintiffs must establish that Defendant's response to Student Doe's harassment by Mr. Geruntho was "clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648. "To prove deliberate indifference, a plaintiff must establish that the school made an official decision not to remedy the alleged violation." *Doe v. Moravian Coll.*, 2023 WL 144436, at *6. The deliberate indifference must "at a minimum, cause students to undergo harassment or make them liable or vulnerable to it." *Davis*, 526 U.S. at 645. "Courts consistently have recognized that a victim's mere discontent with a school's investigation

---

[7] Mr. Geruntho's use of racially derogatory language in front of Student Doe, while offensive and inappropriate, is not relevant for purposes of the Title IX analysis, as Title IX protects against sex-based discrimination and there is no indication that these comments related to Student Doe's sex.

does not establish a Title IX violation." *McAvoy v. Dickinson Coll.*, No. 1:20CV1327, 2023 WL 6276670, at *6–7 (M.D. Pa. Sept. 26, 2023), *aff'd*, 115 F.4th 220 (3d Cir. 2024) (collecting cases).

Although Methacton's response to Mr. Geruntho's conduct did not align with Mother and Father Doe's expectations, their response cannot be said to be "clearly unreasonable." Five days after Mother Doe's email reporting Mr. Geruntho's conduct, on January 3, 2023, Dr. Fowlston, Ms. Chud, and Mother Doe participated in a Zoom call to discuss the sexual harassment by Mr. Geruntho and Nick. The day following that call, Dr. Fowlston assured Mother Doe that it was safe for Student Doe to return to school the next day. Indeed, Plaintiffs do not allege that Student Doe came into contact with Mr. Geruntho again after Mother Doe reported his behavior on December 29, 2022. Furthermore, although Defendant did not inform Plaintiffs as to the results of any investigation into Mr. Geruntho they undertook, nor did it inform Plaintiffs of Mr. Geruntho's status of employment with the school, Methacton did report the abuse to the OCY, and an OCY caseworker interviewed Student Doe the day that she returned to school to discuss her report of sexual harassment.

The Amended Complaint shows that Defendant took responsive action to ensure that Student Doe was no longer in contact with Mr. Geruntho. Plaintiffs do not allege that the actions of Methacton resulted in additional harassment. Although Plaintiffs have alleged that Methacton failed to share details of any preliminary investigation that did occur with Student Doe's parents, failed to timely share the appropriate records with Student Doe's parents, delayed the formal Title IX investigation, did not properly refer Student Doe's complaint to the Title IX coordinator or inform her of her rights under Title IX, and ultimately declined to complete the Title IX process, these are all allegations of procedural defects with Methacton's investigation. (ECF No. 18-1 at 17.) Dissatisfaction with the manner in which Methacton conducted the investigation does not

18

establish deliberate indifference.[8] *McAvoy v. Dickinson Coll.*, 2023 WL 6276670, at *6–7. Rather than choosing "not to remedy the alleged violation," *Doe v. Moravian Coll.*, 2023 WL 144436, at *6, the Amended Complaint shows that Defendant removed Mr. Geruntho from contact with Student Doe and alerted OCY of the conduct. The Court cannot say that this was a "clearly unreasonable" response. Moreover, the Amended Complaint does not contain any allegations that the investigation's alleged shortcomings caused Student Doe to undergo additional harassment or made her more vulnerable to it. Because Plaintiffs have failed to allege that Defendant acted with deliberate indifference when they were notified of Mr. Geruntho's sexual harassment of Student Doe, the Title IX claim as it relates to Mr. Geruntho's conduct must also be dismissed.

### b. Retaliation in Violation of Title IX (Count 2)

Title IX also protects individuals who pursue claims under it from retaliation. To establish a prima facie case of retaliation under Title IX, a plaintiff must demonstrate that (1) "she engaged in activity protected by Title IX," (2) "she suffered an adverse action," and (3) "there was a causal connection between the two." *Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 564 (3d Cir. 2017). If the plaintiff makes out a prima facie case, the burden then shifts to the defendant to advance a "legitimate, nonretaliatory reason for its conduct." *Id.* If the defendant establishes a legitimate reason for its conduct, the plaintiff must then show that the "proffered explanation was false and that retaliation was the real reason for the adverse action against her." *Id.*

---

[8] Although Plaintiffs assert that "post-report deliberate indifference" is the "most basic type of Title IX claim," they only cite one case in support of this proposition—*S.M. v. Tamaqua Area Sch. Dist.*, No. 3:22-cv-00525, 2023 WL 2332251 (M.D. Pa. 2023). However, the facts of *Tamaqua* show that the defendants failed to "take any investigatory or disciplinary action" following multiple direct reports to school personnel regarding multiple sexual assaults. This included the defendants' failure to segregate the students from their assaulters after the students reported the assaults, which resulted in a second attempted sexual assault. *Id.* at *2. This case is therefore inapposite.

Defendant does not dispute that Plaintiffs engaged in activity protected by Title IX. Rather, Defendant contends that Plaintiffs fail to "specifically allege what conduct is purported to be materially adverse such that it constitutes retaliation under Title IX," and to the extent Plaintiffs do allege adverse actions in the form of Methacton's IEP and educational decisions, that they fail to establish a causal connection between those actions and the protected activity. (ECF No. 15 at 11–12.) In response, Plaintiffs argue that the Amended Complaint sets forth multiple adverse actions, including Methacton's (1) failure to promptly and properly investigate Student Doe's sexual harassment claims, (2) failure to provide Student Doe's parents with her education records in their entirety, (3) decision to delay IEP meetings and blame Student Doe's parents for "lack of parental participation," (4) decision to delay the Title IX investigation, (5) failure to initiate appropriate supportive measures, (6) inappropriate changes to Student Doe's education program and decision to transfer her to an inferior virtual program, (7) significant reduction in Student Doe's special education services, (8) attempt to coerce Mother Doe into signing an agreement to waive Student Doe's rights to special education and all past claims against Methacton, (9) dismissal of the formal Title IX complaint, and (10) improper imposition of restrictions on Student Doe's parents' use of compensatory education funds and refusal to pay for certain legitimate educational expenses. (ECF No. 18-1 at 20–21.)

At the outset, the Court notes that "a plaintiff may not rely on a defendant's inaction or failure to remedy discrimination as intentional conduct to support a claim of retaliation under Title IX." *Doe by Nied v. Riverside Sch. Dist.*, 3:23-CV-1118, 2023 WL 8549035, at *6 (M.D. Pa. Dec. 11, 2023); *see also O'Reilly v. Inst. for Cancer Rsch.*, No. CV 24-5315, 2025 WL 2808916, at *17 (E.D. Pa. Oct. 2, 2025) (noting that "the failure to adequately investigate a plaintiff's discrimination complaint cannot constitute a materially adverse action to support a retaliation claim" in the context of a Title VII claim, the framework of which Title IX adopts). "[A] material

adverse action is one that 'produces injury or harm.'" *S.K. v. N. Allegheny Sch. Dist.*, 168 F. Supp. 3d 786, 804 (W.D. Pa. 2016) (citing *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006)).

After removing Plaintiffs' allegations of adverse actions that assert pitfalls in Methacton's investigation of the sexual harassment that Student Doe faced or Defendant's failure to act, what remains are Plaintiffs' allegations that Methacton delayed IEP meetings, blamed Student Doe's parents for their lack of participation, inappropriately changed Student Doe's education program and moved her to an inferior virtual program, reduced Student Doe's special education services, attempted to coerce Mother Doe into signing an agreement to waive Student Doe's rights, dismissed the formal Title IX complaint, and imposed restrictions on Student Does' parents use of compensatory education funds and refused to reimburse them for certain legitimate educational expenses. While the Court does not find that comments by Methacton blaming Student Doe's parents for their lack of participation in her education would constitute an adverse action that produces injury or harm, the remaining allegations sufficiently set forth the prima facie element of adverse action at this stage of the case. As alleged, Student Doe was harmed by Defendant's reduction in her special education services and her transfer to the virtual learning program. Additionally, her parents were financially harmed by Defendant's refusal to reimburse them for certain educational expenses that they allege were contemplated by the Hearing Officer's award of compensatory educational funds.

Turning to causation, "a Title IX plaintiff may demonstrate causation in three ways: (1) by way of temporal proximity between the adverse action and the protected activity, (2) by showing a 'pattern of animus' after the protected activity; or (3) 'by other circumstantial evidence concerning the' school's motivation, including 'inconsistent reasons given' by the school or its treatment of others." *Doe v. Manor Coll.*, 479 F. Supp. 3d 151, 172 (E.D. Pa. 2020). Here, Plaintiffs

21

allege that Defendant demonstrated a "pattern of antagonism and hostility toward Student Doe" and that there was a "strong temporal proximity" between their reports of the sexual harassment and Methacton's adverse actions. (ECF No. 18-1 at 21.) Defendant sets forth vague arguments that Plaintiffs do not allege facts that demonstrate causation, but Defendant does not reference any of the facts in the Amended Complaint. (ECF No. 15 at 12.)

The Court finds that Plaintiffs have adequately alleged causation at this stage with the plausibility required by Rule 12(b)(6) given the temporal proximity between Mother Doe's complaints to the school and Student Doe's reduction in special education services. Plaintiffs allege that on January 9, 2023, about two weeks after Mother Doe sent her initial email complaining of Mr. Geruntho's conduct, Methacton proposed virtual instruction for Student Doe without offering supportive measures to allow her to access her current in-person educational programming. Student Doe's access to therapy, her special education services, and in-person instruction were subsequently whittled away until she was moved to an entirely virtual program with no therapy or special education services on March 22, 2023. By this date, Student Doe's IEP was completely removed. At a May 2, 2023 meeting with Methacton administrators, Student Doe's mother shared how challenging the virtual programming had been for Student Doe. However, Methacton did not offer any additional supports or continued programming for Student Doe in response, and instead attempted to coerce Mother Doe into signing a waiver agreement that would have waived Student Doe's educational and due process rights related to future special education services and past claims against Methacton. Throughout this time, Mother Doe had requested multiple times that Methacton investigate Mr. Geruntho's conduct further, but these requests were ignored.

Although Defendant may have had a legitimate reason for their reduction in Student Doe's special education services, Defendant does not attempt to explain what that reason was. Based on

22

the temporal proximity between Mother Doe's complaint of sexual harassment of her daughter and the reduction in education services that Student Doe faced, Plaintiffs have made a prima facie showing of causation.

Finding that Plaintiffs have made out a prima facie case for retaliation, the Court looks to the legitimate nonretaliatory reasons for Student Doe's diminished IEP and educational resources. Defendant fails to set forth any such reason in its Motion to Dismiss. Because Defendant has failed to meet its burden, the Court denies its Motion to Dismiss on the retaliation claim.

### c.  Section 1983 Enforcement of Title IX (Count 3)

Plaintiffs bring a claim for enforcement of Title IX under § 1983. Defendant asserts that this claim must be dismissed as a matter of law because "§ 1983 does not offer a route to recover for alleged violations of Title IX; instead, a plaintiff must bring a claim for a violation of Title IX only under that statutory scheme." (ECF No. 15 at 13 (citing *M.S. by & through N.S. v. Twin Valley Sch. Dist.*, 2016 WL 11698061, at *11 (E.D. Pa. 2016).) Plaintiffs do not respond to Defendant's argument that an action for enforcement under § 1983 is available for Title IX. This alone is enough for dismissal, as Plaintiffs have waived this claim. *Perez v. IMA Grp.*, No. CV 23-4367, 2024 WL 2925960, at *2 (E.D. Pa. June 10, 2024) ("A response in opposition to a motion to dismiss that fails to respond to a substantive argument is a waiver or abandonment of that claim." (citing *Dreibelbis v. Scholton*, 274 F. App'x 183, 185 (3d Cir. 2008)).

However, this Court reaches the merits and agrees with Defendant that Title IX may not be enforced through a § 1983 action due to the "availability of a comprehensive statutory scheme" under Title IX, which "establishes that Congress did not intend a violation of that statutory scheme to be remedied through § 1983." *Twin Valley Sch. Dist.*, 2016 WL 11698061, at *11 (citing *A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791 (3d Cir. 2007)). Because a Title IX violation is not actionable under § 1983, Plaintiffs' claim for enforcement under § 1983 is therefore dismissed.

**d.  Section 1983 Enforcement of the Equal Protection Clause (Count 4)**

Plaintiffs bring a claim for enforcement of the Equal Protection Clause of the Fourteenth Amendment based on the alleged unconstitutional sex-based discrimination that Student Doe faced as a result of Methacton's customs, policies, or practices, which allegedly resulted in a hostile school environment for Student Doe. (Am. Compl. ¶¶ 244, 246.)

To establish a hostile environment Equal Protection claim, a plaintiff must "prove all the elements of her Title IX claim and that the harassment was the result of municipal custom, policy, or practice." *Goodwin v. Pennridge Sch. Dist.*, 389 F. Supp. 3d 304, 319–20 (E.D. Pa. 2019); *cf. Wassel v. Penn. State Univ.*, No. 4:23-CV-02071, 2024 WL 2057514, at *13 (M.D. Pa. May 7, 2024) (holding that because plaintiff plausibly alleged a Title IX claim, she also plausibly alleged a violation of her constitutional rights under the Equal Protection Clause). Because Plaintiffs have failed to establish all elements of their Title IX claim, as explained *infra*, their § 1983 claim for enforcement of the Equal Protection Clause must necessarily fail as well. The Court need not assess whether Plaintiffs have sufficiently alleged that the harassment was the result of a municipal custom, policy, or practice.

**IV.    CONCLUSION**

For the foregoing reasons, the Court grants Defendant's Motion to Dismiss as to Counts 1, 3, and 4 and denies Defendant's Motion to Dismiss as to Count 2. The Court grants Plaintiffs leave to replead Counts 1 and 4 within 21 days of the date of this order to correct the deficiencies as noted in this opinion. Because Defendant's Motion did not challenge Counts 5–7, those claims are also allowed to proceed. An appropriate Order follows.

BY THE COURT:

/s/ Hon. Kelley B Hodge

HODGE, KELLEY B., J.

24